No. 12632

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

EUNICE WALLIN,

Opponent and Appellant,

-vs-

JESSE KINYON ESTATE,

Proponent and Respondent.

---

Appeal from: District Court of the Fourteenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Richard Conklin argued, White Sulphur Springs, Montana

For Respondent:

John V. Potter, Jr. argued, White Sulphur Springs,
Montana

---

Submitted: February 25, 1974

Decided: MAR 14 1974

Filed: MAR 14 1974

_Thomas J. Kearney_
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of Meagher County, the Hon. LeRoy L. McKinnon presiding, granting proponent's motion for a directed verdict admitting the will of Jesse Kinyon to probate.

The testator, Jesse Kinyon, by will dated January 18, 1971, made bequests of $1,000 each to three nieces (including contestant Eunice Wallin), $2,000 to a cousin, King Walters, and bequeathed the remainder of his estate to the Mayn Cemetery District. The will indicates the testator's reasons for leaving the remainder of his estate to the cemetery district was to make possible the fencing, restoring and maintaining the Fort Logan burial ground at which his parents were buried, and to use the remainder to improve the Mayn cemetery at which the testator wished to be buried.

The will was drafted by Jennie L. Minder, the public administratrix of Meagher County, with the aid of John V. Potter, an attorney who employed her as his secretary. She was called by Kenneth Twichel, the clerk of court, to help the testator draw up a will. By the terms of the will she was appointed executrix.

Testator died January 26, 1971, at age 79, leaving approximately $30,000 in his estate. At the time of his death, he was residing in a rest home in Meagher County. He left surviving him as his nearest relatives eight nieces and nephews.

The petition for probate of this will was contested by the testator's niece, Eunice Wallin, appellant herein. Under a former will dated January 17, 1967, testator left his entire estate to her.

After the district court's denial of proponent's motion for summary judgment, the matter went to trial before a jury April 4, 1973, on issues of (1) proper attestation of the will, and (2) undue influence. At the beginning of the jury trial,

- 2 -

the district court granted proponent's motion in limine to exclude testimony regarding the claimed invalidity of the charitable bequest to the Mayn Cemetery District, and the alleged actions of the executrix in drafting the will as constituting the practice of law without a license.

Proponent presented testimony of the two subscribing witnesses (employees of the rest home where testator was being cared for), and the testimony of proponent as to her qualifications and willingness to act as executrix.

Both subscribing witnesses to the will acknowledged that prior to signing it, each had taken notice of the attestation clause of the will appearing above their signatures and knew the purpose for which their signature was requested.

Proponent testified that the testator had read the first draft of the will himself, that after some minor changes had been made at his request, she read the final draft to him immediately prior to his signing.

Attesting witness Clark testified that when she entered the testator's room prior to witnessing the will, the testator was "sitting in a chair with a little table in front of him"; that the proponent asked him "if he understood what had been read to him, and if he wanted her to re-read it and he said no." She further testified that testator was asked "if he was ready to sign and he said yes. * * * He signed it and handed the pen to me and I signed it and handed it (the pen) to him and he handed it to Ellen (the other attesting witness) and she signed it, that was it." The testator didn't say anything, he "just looked up at me and handed me the pen."

Nielson, the other attesting witness testified that the testator stated "he knew what was in it and wanted to get it over with"; that when he finished signing, and after Clark had signed

- 3 -

and given the pen back to the testator, that "he turned around and handed it (the pen) to me", and "just motioned that he wanted me to sign it."

Contestant's entire case was based on cross-examination of the two subscribing witnesses, cross-examination of the proponent, and examination of the proponent as an adverse witness. The only other evidence submitted by contestant was the prior 1967 will of the testator. Contestant's examination of proponent was to the effect that her fee as public administratrix was set at a higher figure by statute than that which a relative or other ordinary person would receive as executor of the will. See section 91-628, R.C.M. 1947, and section 91-3407, R.C.M. 1947.

At the close of contestant's case, the district court found there was no evidence upon which the jury could find against the will and directed a verdict in favor of the proponent. Thereafter, contestant's motion for a new trial was denied, and judgment was entered admitting the last will and testament of Jesse Kinyon to probate. This appeal followed.

Several issues are raised on appeal which may be summarized as follows:

(1) Error in granting the motion in limine and in denying a continuance based on surprise;

(2) Error in granting a directed verdict.

The day before trial a written motion in limine was filed by proponent and served upon opposing counsel. At the onset of trial, proponent's motion was argued and granted. This motion instructed:

> " * * * Contestant, her attorney, and witnesses
> on her behalf not to mention, not to refer to
> either directly or indirectly and not to elicit
> testimony respecting the claimed invalidity of the
> bequest to the Trustees of the Mayn Cemetery
> District, or the actions of the Proponent as
> constituting the practice of law, acting as a

- 4 -

lawyer or otherwise imputing improper, unethical
or illegal conduct in that regard to the Proponent,
and absolutely prohibit and exclude such testimony,
reference or suggestion." (Emphasis added.)

Contestant then requested a continuance based on surprise arising from the granting of the motion in limine. This request was denied.

Contestant argues that questioning in regard to the matters excluded by the motion is relevant to proving undue influence as to the charitable gift and the execution of the will itself. By granting the motion in limine and refusing to grant a continuance contestant argued that two-thirds of her case could not be presented.

Proponent argues that a motion in limine was necessary to prohibit irrelevant and immaterial testimony which would not tend to prove or disprove any issue in the case but would only improperly influence the jury. He further argues that an objection during trial which was sustained would not remove the prejudicial effect on the jury of such comment.

Authority for the granting of a motion in limine rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties. People v. Jackson, 95 Cal.Rptr. 919, 18 Cal.App.3d 504. Rule 16(6), M.R.Civ.P., permits the court in its discretion to consider "* * * matters as may aid in the disposition of the action." See 94 ALR2d 1087 and 20 Am Jur Trials p. 441. (It should be noted here that there was no pretrial conference.)

The decision of the district court in excluding questions at trial of the proponent's alleged practice of law was conducive to the prevention of irrelevant, immaterial and prejudicial evidence being heard by the jury. The purpose, and effect, of the court's granting the motion in limine was to prevent that which

occurred in the case of In the Matter of the Estate of Powers,
____Mont.____, 515 P.2d 368, 30 St.Rep. 917, where many diverse
issues were allowed "* * * to divert the trial court from the
single issue * * *."

Contrary to what was stated in contestant's brief, the
motion did not prevent the introduction of evidence which might
prove that the bequest to the cemetery district was "unnatural"
or that the "* * * undertaker profited by the community cemetery
being improved * * *." It was introduction of evidence on the
issue of the invalidity of such bequest which was prohibited.
It is the law in Montana that such issues as charitable bequests
and their validity in conforming with the common law "mortmain"
and section 91-142, R.C.M. 1947, may only be determined in appro-
priate proceedings after the will is formally admitted to probate.
In re Estate of Murphy, 57 Mont. 273, 188 P. 146; In re Hobbins'
Estate, 41 Mont. 39, 108 P. 7.

In the present case the district court properly granted
said motion. We also hold that the denial of a continuance did
not prejudice the contestant of the will nor deny her a fair
hearing on admission of the will to probate.

The second issue presented for review is whether the dir-
ected verdict admitting the will to probate was proper.

In her appeal contestant has made copious references to
and lengthy quotations from depositions of the subscribing wit-
nesses and from the transcript of oral testimony given at the
hearing on the motion for summary judgment prior to trial. This
Court will only consider the evidence introduced at trial in
reviewing a trial judge's order for directed verdict, since that
was the only evidence before the jury upon which their verdict
could be based. If such trial evidence was not substantial in
itself to sustain the contestant's burden of proof, the order

directing a verdict against the contestant will be upheld. In the Matter of the Estate of Powers, ___Mont.___, 515 P.2d 368, 30 St.Rep. 917; In re Estate of Hall v. Milkovich, 158 Mont. 438, 492 P.2d 1388.

This Court in Estate of Maricich, 145 Mont. 146, 400 P.2d 873, and recently reiterated in Hall, set forth five elements to be considered in determining undue influence. In the Hall case the judgment granting a directed verdict was reversed and a new trial ordered. That case is clearly distinguishable on its facts. In the present case the fee Minder was to receive as executrix and the charitable bequest was the essence of contestant's case to prove undue influence. We view this as insufficient to set aside the directed verdict.

This Court has often stated that mere suspicion that undue influence may have or could have been brought to bear is not sufficient to justify setting aside a will and that it is not enough to show that a person had an opportunity to exercise such influence. It must appear that such influence was actually exercised and that it was pushed to such an extent that the resulting testamentary provisions were not those of the testator's will but those of the parties exercising such influence. Nor does Montana follow the rule that the burden of proof shifts from contestant to proponent upon showing of a confidential relationship or active participation in procuring execution of a will between or by a person who profits thereby. Estate of Cocanougher, 141 Mont. 16, 375 P.2d 1009. There was no reason, therefore, in this case to require the proponent to proceed with further proof, and the granting of the motion for a directed verdict was not an abuse of the trial court's discretion.

Contestant also questions the execution of the will as not meeting the statutory requirements of section 91-107, R.C.M.

1947, in that the testator did not verbally declare to the attesting witnesses that this was his last will and testament. This Court has stated in the past that the declarations by the testator need not be in these exact terms, but may be implied from his conduct and the attendant circumstances. Williams v. Swords, 129 Mont. 165, 284 P.2d 674; Estate of Rudd, 140 Mont. 170, 369 P.2d 526; C.f./Estate of Birkeland, ___Mont.___, ___P.2d ___, 31 St.Rep. 198. There is testimony in the record by the attesting witnesses that indicates that they knew what they were signing and that testator was also well aware. His conduct during the execution as set forth above in the facts was sufficient to meet the statutory requirements.

For these reasons the district court's granting a directed verdict and admitting the will to probate is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice John Conway Harrison dissenting.

I dissent.

_____
Justice

- 8 -