No. 13527

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

MELVIN STANDISH,

> Plaintiff and Respondent,

-vs-

BUSINESS MEN'S ASSURANCE COMPANY
OF AMERICA,

> Defendant and Appellant.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

Berg, Angel, Andriolo and Morgan, Bozeman, Montana
Charles F. Angel argued, Bozeman, Montana

For Respondent:

Bennett and Bennett, Bozeman, Montana
Lyman H. Bennett, Jr. argued and Lyman H. Bennett, III
argued, Bozeman, Montana

---

Submitted: March 9, 1977

Decided: APR 20 1977

Filed: APR 20 1977

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant appeals from denial of a motion for judgment notwithstanding the verdict by the district court, Park County. The jury returned a verdict in favor of plaintiff Melvin Standish in the amount of $7,679.32. The parties agree this amount is due, if there was coverage under the group health insurance policy purchased by Brand S. Lumber Company for its employees from defendant, Business Men's Assurance Company of America.

On appeal, the standard of review from a denial of a motion for judgment notwithstanding the verdict made pursuant to Rule 50(b), M.R.Civ.P., is the same as that for review of a motion for directed verdict. Sheeketski v. Bortoli, 86 Nev. 704, 475 P.2d 675; 9 Wright & Miller, Federal Practice and Procedure, Civil §2524. A directed verdict may be granted only where it appears as a matter of law that plaintiff cannot recover upon any view of the evidence, including the legitimate inferences to be drawn from it. Parrish v. Witt, _____Mont._____, 555 P.2d 741, 742, 33 St. Rep. 999, 1,000; Slagsvold v. Johnson, _____Mont._____, 544 P.2d 442, 443, 32 St.Rep. 1273, 1275, and cases cited therein.

Here, the basic question on appeal is whether plaintiff was covered by the group insurance policy. There are two aspects to this question 1) had plaintiff met the initial eligibility requirements, 2) had he been terminated ending policy coverage prior to the injury.

We first note that because there was no employee payment or other affirmative act on the part of the employee which initiates coverage, the determination of when coverage began or when it ends requires inferences from circumstantial evidence. There are a

number of similarities between the instant case and cases involving

the question of coverage under the Worker's Compensation Act or

other social legislation, and while both are for the benefit of

the employee and paid by the employer, there is a major difference

between the two. Worker's Compensation coverage is required by

statute, while the group health insurance policy is not. The

Worker's Compensation statute is construed to prevent avoidance of

the statute. Here it is the provisions of the group insurance

policy which must be interpreted. Those provisions in question

here are:

> "An Individual in an eligible class of Individuals
> shall be eligible for insurance under this policy as
> follows:
>
> " * * * * *
>
> "(b) on the day following the date the Individual
> completes one calendar month of membership in an eligible
> class."

The termination provision reads:

> "(b) If an Individual's insurance under this policy
> is contingent upon employment, the insurance of such
> Individual shall terminate upon termination of such
> employment. Cessation of active work shall be deemed
> termination of employment, except that while an Individual
> is absent on account of sickness or injury, employment
> shall be deemed to continue until premium payments for such
> Individual's insurance are discontinued. At the option of
> the Policyowner, the insurance of an Individual may be
> continued during a temporary lay-off but not beyond the
> end of the policy month following the policy month in
> which the lay-off starts, or may be continued during an
> authorized leave of absence granted by the policyowner
> for reasons other than sickness or injury, but not beyond
> the period ending three months after such leave of absence
> starts."

The questions to be determined for coverage are (1) when,

if ever, did coverage begin, (2) was the cessation of active work

due to injury, and (3) if it was, when were the premiums discontinued?

- 3 -

There was testimony that plaintiff began work on Brand S Lumber Company projects in mid-March, 1974. At that time he was paid by Norman Kelly, who was a construction supervisor for Brand S. Kelly was a full-time employee of Brand S and he was reimbursed by Brand S for wages he paid to those who worked for him. During this initial period no deductions were made for social security or taxes from plaintiff's wages. During the first weeks of May, while Kelly was on vacation, plaintiff was paid directly by Brand S. In late May, prior to going to Colorado on a Brand S. project, Kelly had plaintiff placed on the company's computerized payroll. The crew returned from Colorado on June 26 and both plaintiff and a coworker testified that plaintiff worked on June 27. Plaintiff and the coworker testified testified they both took that Friday off, and the entire next week as well as their July 4 holiday, intending to return to work after the vacation. The coworker did return, but plaintiff injured his ankle in an automobile accident and he reported that he could not return until it had healed.

On or about July 30, plaintiff was injured when a .41 magnum gun he was handling fell to the ground, discharged, and wounded plaintiff in both legs. Plaintiff testified he was given notice of his termination in August, while he was still in the hospital.

Defendant presented evidence to the effect that the checks paid to plaintiff prior to being put on the Brand S. computer payroll were just reimbursement checks paid indirectly to plaintiff instead of directly. A number of business records were introduced giving June 26 as the termination date. It is clear most of those records were made after the July 30 accident, but there was testimony this was done without any knowledge of the accident. The

The insurance bill from defendant to Brand S shows that Brand S had deleted plaintiff because he had not been employed a sufficient period of time. This document was also prepared in early August.

It is clear there were factual disputes to be determined to find if there was coverage under the policy. These factual questions were decided by the jury in favor of plaintiff. It does not appear from the evidence that there was no coverage as a matter of law and therefore the motion for a judgment notwithstanding the verdict was properly denied.

Plaintiff's argument on punitive damages based on an alleged violation of the disability sections of the insurance code is without merit. Disability insurance was not raised in the pleadings and throughout his pretrial memorandum plaintiff speaks only of medical bills under the health insurance. There was no clear showing of the existence of disability insurance, nor is there any showing of the requisite oppression, fraud, or malice to bring this case under the rule of State ex rel. Larson v. District Court, 149 Mont. 131, 423 P.2d 598.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

- 5 -