No. 02-555

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 46

IN THE MATTER OF THE
MENTAL HEALTH OF D.L.T.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade, Cause No. CDI-02-020
                The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Lawrence A. LaFountain, Cascade County Public Defender
                Great Falls, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Jennifer Anders,
                Assistant Attorney General, Helena, Montana

                                Submitted on Briefs:  December 19, 2002

                                        Decided:  March 14, 2003

Filed:

        _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     The Eighth Judicial District Court, Cascade County, ordered D.L.T. involuntarily committed to the Montana State Hospital. D.L.T. appeals and we reverse.

¶2     The issue is whether the District Court erred by denying D.L.T.'s motion for a directed verdict.

¶3     D.L.T. was arrested in Polson, Montana, after allegedly assaulting her husband while on a family visit there, and ultimately charged with partner or family member assault and resisting arrest. The Polson City Court released her on bond, on condition that she undergo psychological evaluation. Dr. Mary Ann Evans (Dr. Evans) initially evaluated D.L.T. at Benefis Hospital in Great Falls. D.L.T. left the hospital before the evaluation was complete and went to Malmstrom Air Force Base (MAFB), where her family resides. Air Force authorities brought her to Dr. Mark Moser (Dr. Moser), the MAFB psychiatrist, with whom she waited until deputies from the Cascade County Sheriff's Office arrived and returned her to Benefis Hospital for further evaluation by Dr. Evans.

¶4     The Cascade County Attorney's Office (State) petitioned the District Court to determine that D.L.T. was suffering from a mental disorder and commit her to a mental health facility. At a hearing on July 18, 2002, D.L.T. objected to the admissibility of certain evidence and the court overruled the objections. At the conclusion of the State's case, D.L.T. moved for a directed verdict and the District Court denied her motion. Following the

2

hearing, the court issued its findings, conclusions and order committing D.L.T. to the Montana State Hospital. D.L.T. appeals.

¶5 Did the District Court abuse its discretion by admitting evidence and by denying D.L.T.'s motion for a directed verdict?

¶6 D.L.T. argues that the District Court erred in overruling her evidentiary objections during the State's presentation of evidence. Because her objections should have been sustained, she asserts the State did not introduce evidence required by statute and, consequently, the court also erred in denying her later motion for a directed verdict.

¶7 We review a district court's evidentiary rulings for an abuse of discretion. *State v. Hope*, 2001 MT 207, ¶ 11, 306 Mont. 334, ¶ 11, 33 P.3d 629, ¶ 11 (citation omitted). We also review a district court's decision regarding a motion for a directed verdict for an abuse of discretion. *See Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 25, 301 Mont. 259, ¶ 25, 9 P.3d 38, ¶ 25 (citation omitted).

¶8 The statutes governing involuntary commitments in Montana are contained in Title 53, Chapter 21, Part 1, MCA. We require that those laws be strictly followed, since they "are of critical importance because of the 'calamitous effect of a commitment,' including loss of liberty and damage to a person's reputation." *In re T.J.D.*, 2002 MT 24, ¶ 20, 308 Mont. 222, ¶ 20, 41 P.3d 323, ¶ 20 (citing *In re R.M.* (1995), 270 Mont. 40, 44, 889 P.2d 1201, 1204 (citations omitted)).

¶9 Section 53-21-126(1), MCA, authorizes the involuntary commitment of a person suffering from a mental disorder if the person poses an "imminent threat of injury" to the

person or others. Section 53-21-126(2), MCA, requires that "[i]mminent threat of . . . injury to others . . . be proved by overt acts or omissions, sufficiently recent in time as to be material and relevant as to the [person]'s present condition."

¶10 A professional person appointed by the court must examine the person against whom a petition is filed and report to the court; the report must state whether the professional person recommends commitment. Section 53-21-123(1), MCA. The professional person must be present at the trial and his or her report "may be attached to the petition, but any matter otherwise inadmissible, such as hearsay matter, is not admissible merely because it is contained in the report." Section 53-21-126(3), MCA. As applied to the present case, the testimony of the professional person is insufficient unless accompanied by evidence that "there is an imminent threat of injury to the [person] or to others because of the [person]'s acts or omissions," or "the [person] has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others." *See* § 53-21-126(4), MCA.

¶11 The State called Dr. Evans as its only witness at trial. Dr. Evans testified regarding matters reported to her by D.L.T.'s husband and parents, and by Dr. Moser and the Polson City Court judge. D.L.T.'s family members reported disturbing behavior by D.L.T., including one incident some years before in which she threw her infant son to her father while yelling a profanity. The criminal charges pending in Polson City Court alleged D.L.T. had recently assaulted her husband. Dr. Moser described D.L.T.'s behavior to Dr. Evans as like a "live wire" while waiting at MAFB for sheriff's deputies.

4

¶12 D.L.T. objected to Dr. Evans' testimony reiterating the information reported to her by others on hearsay grounds, and the District Court overruled her objections. On appeal, she asserts the only evidence introduced of her recent "overt act[s] or omission[s]" was Dr. Evans' inadmissible hearsay and that, the District Court having abused its discretion in admitting the evidence, the court also abused its discretion in denying her motion for a directed verdict.

¶13 "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), M.R.Evid. Unless an exception applies, hearsay is not admissible. Rule 802, M.R.Evid.

¶14 The State neither concedes that Dr. Evans' testimony contained inadmissible hearsay nor contests D.L.T.'s argument characterizing the testimony as hearsay. Instead, the State argues that sufficient evidence in the record, "[a]side [f]rom [i]nadmissible [h]earsay," supports the District Court's determination that D.L.T. poses an imminent threat to herself and others. Specifically, the State contends information about the Polson incident is contained in a restraining order obtained by D.L.T.'s husband and is further supported by the existence of criminal charges filed in the Polson City Court. The State asserts these documents are public records of which the District Court could take judicial notice.

¶15 We will not consider whether the District Court *could* take judicial notice of any public records, because the record before us is devoid of any request that it do so. Moreover, the District Court's order for commitment clearly reflects that it is based on Dr. Evans' testimony.

5

¶16    The State also asks that we overlook the fact that it did not present any testimony from D.L.T.'s husband, based on its representations to the District Court that he loves his wife and feared his presence might "agitate" her. D.L.T.'s husband's motives aside, the State was obligated in this case, pursuant to § 53-21-126(2) and (4), MCA, to introduce evidence of D.L.T.'s recent overt acts or omissions separate from the professional person's testimony.

¶17    The only evidence the State presented at D.L.T.'s commitment hearing was Dr. Evans' testimony. Therefore, the only evidence of D.L.T.'s "act[s] or omission[s]" leading to injury or imminent threat of injury to herself or others, as required by § 53-21-126(1)(c), (2) and (4)(c), MCA, is the statements of persons not present at the hearing, which were introduced for purposes of proving D.L.T.'s acts. This evidence is, on the face of it, hearsay, and the State does not raise on appeal--and did not raise at trial--any applicable exception. We conclude the District Court abused its discretion in admitting the statements of D.L.T.'s husband, the Polson City Court judge, and Dr. Moser–all presented via Dr. Evans' testimony--for the truth of the matters stated.

¶18    The State having failed to introduce the evidence required by § 53-21-126, MCA, the statutory criteria for involuntary commitment were not met. Because the statutory criteria were not met, and because the laws regarding involuntary commitment must be strictly followed, *T.J.D.*, ¶ 20, we conclude the District Court abused its discretion in denying D.L.T.'s motion for a directed verdict. Consequently, we hold the court erred in committing D.L.T. to the Montana State Hospital.

¶19    Reversed.

6

/S/ KARLA M. GRAY

We concur:


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice Jim Regnier dissenting.

¶20    Disregarding the hearsay matters, I believe there was sufficient testimony presented by Dr. Evans to support the District Court's conclusion that D.L.T. was a danger to herself and others.

¶21    Dr. Evans testified that D.L.T. suffered from a serious mental illness which she diagnosed as bipolar affective disorder.  More problematical, D.L.T. was refusing medication.  The psychiatrist further observed that D.L.T. was not a cooperative patient nor did she respond well to treatment recommendations.  It was Dr. Evans' opinion that D.L.T. suffered from a lack of insight which she characterized as delusional and psychotic.  Because of this combination, Dr. Evans testified that D.L.T.'s untreated mental condition posed a threat to the community.  These observations and medical conclusions were not based on hearsay but on Dr. Evans' personal observations.  In my view, this testimony alone supports the District Court's commitment.  The District Court focused on this testimony and also concluded that D.L.T. was a threat to the community in her untreated condition. See Finding of Fact No. 12.

¶22    I would affirm the District Court and dissent from our failure to do so.

/S/ JIM REGNIER

8