No. 04-835

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 43

ELLERY C. JOHNSON,

  Plaintiff and Appellant,

v.

COSTCO WHOLESALE,

  Defendant and Respondent.

APPEAL FROM:   The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 2003-0741,
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

  Patricia D. Peterman, Patten, Peterman, Bekkedahl & Green, PLLC,
  Billings, Montana

  For Respondent:

  John C. Crist, Eric Edward Nord, Crist Law Firm, LLC,
  Billings, Montana

Submitted on Briefs:  July 13, 2005

Decided:  February 13, 2007

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Ellery Johnson (Johnson) appeals the dismissal by the Thirteenth Judicial District Court of his action for wrongful discharge in which he alleged wrongful termination of his employment from Costco Wholesale (Costco). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

¶2      The three issues raised on appeal are:

¶3      1.      Did the District Court err when it granted Costco's motion for judgment as a matter of law[1]?

¶4      2.      Did the District Court err in entering judgment for attorney fees in favor of Costco based solely on the affidavit of Costco's attorney without conducting an evidentiary hearing?

¶5      3.      Are the Wrongful Discharge from Employment Act's arbitration and attorney fees statutes unconstitutional?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6      Johnson worked as a baker in the Costco bakery in Billings, Montana, from 1993 until he was discharged on March 1, 2003. From all accounts, Johnson was a satisfactory

---

[1]     Throughout their briefs, the parties use the terms "directed verdict" and "judgment as a matter of law" interchangeably. However, in March 1993, this Court amended M. R. Civ. P. 50(a), to refer to the particular motion provided by that Rule as a "Motion for Judgment as a Matter of Law" rather than a "Motion for Directed Verdict." This change followed the 1991 amendment to the federal rule. The Advisory Committee Notes to the 1991 amendment to Fed. R. Civ. P. 50, state that the rule was amended because the term "directed verdict" is "misleading as a description of the relationship between judge and jury." The Advisory Committee Notes also state that "[i]f a motion is denominated a motion for directed verdict . . . the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law . . . ." Hence, we will refer to such motions throughout this Opinion as "Motions for Judgment as a Matter of Law" even though the parties may have termed them otherwise. *Williams v. Union Fidelity Life Ins. Co.*, 2005 MT 273, ¶ 1 n.1, 329 Mont. 158, ¶ 1 n.1, 123 P.3d 213, ¶ 1 n.1.

employee. At all points during Johnson's employment at Costco, there existed a "grazing" policy. Grazing is considered grounds for termination. Costco's March 2001 employment agreement states that grazing is the use or consumption of the following, which

> includes, but is not limited to: shelf stock, RTV merchandise, merchandise returned at membership, and any packages that become opened by either members during the course of the day or damaged in the process of stocking (i.e., blade cut, defective seams, etc.). Also included are Food Court and fresh products and any ingredients used in their preparation. "If you didn't buy it, don't eat it!"

When baked goods at Costco have not been sold after a certain amount of time, the goods are considered "salvage" and are then either thrown out or donated to a rescue mission.

¶7 Throughout Johnson's employment up until roughly the fall of 2001, he and fellow employees interpreted the grazing policy quite liberally in their day-to-day work environments. It was not uncommon for employees to eat pieces of food for the purposes of testing the quality or sometimes even as a snack. In July of 2001, Cindy Petersen took over as the new general manager of the Billings Costco store. Petersen implemented a strict adherence to the grazing policy and attempted to ensure that if employees were to eat any Costco products for any purpose that a supervisor or manager must approve it. Petersen held a meeting in response to a grazing incident, in which Johnson was present, where she explained that any future violation of the grazing policy could result in immediate termination.

¶8 On February 25, 2003, Johnson reported to work early in the morning. He proceeded to pick up a box of salvage danish and took a bite of the product. Johnson

3

threw away the rest of the box because he was not pleased with the quality of the danish. Unbeknownst to Johnson, another baker, Tammy Vogel, witnessed Johnson take the bite of salvage danish. Johnson originally explained to Vogel that he took the danish because he was "starving." Vogel proceeded to speak to a supervisor, Bill Bogy, regarding the incident. Bogy then informed Petersen of Johnson's behavior. Petersen, Bogy, and Johnson subsequently held a meeting to discuss Johnson's actions. In the meeting, Johnson admitted taking a bite of the salvage danish and explained that he was in fact hungry, but that he also was checking the danish for quality. Based on what Petersen viewed as a violation of the grazing policy, Johnson was instructed to take three days off from work so that she could investigate the situation.

¶9     Petersen later contacted various Costco executives—including the regional manager and also the senior vice-president. Specifically, Petersen spoke to John McKay, Costco's senior vice-president, regarding Johnson. McKay later reported to Petersen that he had discussed the situation with Craig Jelinek, Costco's executive vice-president, and that pursuant to Jelinek's order, Petersen should terminate Johnson. Johnson was subsequently discharged from his employment with Costco on March 1, 2003. Costco's stated reason for discharging Johnson was for violating the grazing policy by eating a piece of salvage danish. Petersen never spoke specifically with Jelinek prior to or at the time of Johnson's termination. Costco's personnel policy regarding the termination of employees with ten years of experience, like Johnson, requires that the decision to terminate such an employee be done by an executive vice-president. In other words, in

4

accordance with Costco's personnel policy, the decision to terminate Johnson must have come directly from Jelinek, Costco's executive vice-president.

¶10 Subsequent to Johnson's discharge, Sherry Thompson, an employee in the service deli at Costco was observed eating a piece of pie dough. Thompson admitted eating the pie dough and also acknowledged that she understood the grazing policy—"if you don't buy it, don't eat it"—prior to eating the pie dough. Thompson did this without approval from a manager or supervisor and was eventually turned in to Costco management. Despite eating pie dough without paying for it, Thompson remained employed at Costco and did not undergo any disciplinary measures.

¶11 Additional facts will be discussed where relevant.

¶12 Johnson filed an action under the Wrongful Discharge From Employment Act, §§ 39-2-901 -915, MCA. Costco denied all of Johnson's allegations and a jury trial was held on September 20 and 21, 2004. After Johnson had presented his case-in-chief, Costco moved for judgment as a matter of law. The District Court deferred ruling and then granted the motion while Costco was presenting its case-in-chief. The court held that Johnson's violation of the grazing policy was good cause as matter of law for termination pursuant to §§ 39-2-903 and 904, MCA. Johnson appeals.

**STANDARD OF REVIEW**

¶13 The legal principles governing whether a motion for judgment as a matter of law should be granted or denied by the trial court are well settled. Judgment as a matter of law is properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate

5

inferences that might be drawn from the evidence must be considered in the light most favorable to the party opposing the motion. *Williams*, ¶ 19 (citing *Marie Deonier v. Paul Revere Life Ins. Co.*, 2004 MT 297, ¶ 18, 323 Mont. 387, ¶ 18, 101 P.3d 742, ¶ 18; *Bevacqua v. Union Pacific R.*, 1998 MT 120, ¶ 46, 289 Mont. 36, ¶ 46, 960 P.2d 273, ¶ 46; *Durden v. Hydro Flame Corp.*, 1998 MT 47, ¶ 22, 288 Mont. 1, ¶ 22, 955 P.2d 160, ¶ 22). Courts should exercise the greatest self-restraint in interfering with the constitutionally mandated processes of a jury decision. *Ryan v. City of Bozeman*, 279 Mont 507, 510, 928 P.2d 228, 230 (1996). Judgment as a matter of law is not proper if reasonable persons could differ regarding conclusions that could be drawn from the evidence. *Kearney v. KXLF Communications, Inc.*, 263 Mont. 407, 417, 869 P.2d 772, 777-78 (1994).

¶14     It is also well settled that this Court's standard of review of appeals from district court orders granting or denying motions for judgment as a matter of law is identical to that of the district court. *Williams*, ¶ 19, (citing *Deonier* ¶ 18; *Durden*, ¶ 21; *Ryan*, 279 Mont. at 510, 928 P.2d at 229-30). Having said that, however, this Court has used two inconsistent approaches in our application of these legal principles to our review of cases on appeal where the issue involves the propriety of the trial court's grant or denial of a motion for judgment as a matter of law.

¶15     Basically, our cases fall into two categories—those that apply a *de novo* standard of review, thus treating our review of the trial court's decision as a legal question—and those that apply an abuse of discretion standard of review, effectively treating the court's decision as an evidentiary issue. We have long held that "[a] cause should never be

withdrawn from the jury, unless the conclusion from the facts follows necessarily, *as a matter of law*, that a recovery cannot be had." *Johnson v. Chicago, M & St. P. R. Co.*, 71 Mont. 390, 394, 230 P. 52, 53 (1924) (emphasis added). Further, we explained, "[judgment as a matter of law] may be granted only where it appears as a matter of law that plaintiff cannot recover upon any view of the evidence." *Standish v. Business Men's Assur. Co.*, 172 Mont. 264, 265, 563 P.2d 552, 553 (1977) (citing *Parrish v. Witt*, 171 Mont. 101, 103, 555 P.2d 741, 742 (1976); *Slagsvold v. Johnson*, 168 Mont. 490, 492, 544 P.2d 442, 443 (1975)). We have since repeatedly affirmed our treatment of the standard of review for the grant or denial of judgment as a matter of law as stated in *Johnson*, *Standish*, *Parrish*, and *Slagsvold* in our decisions in *Wilkerson v. Sch. Dist. No. 15, Glacier Cty.*, 216 Mont. 203, 211, 700 P.2d 617, 622 (1985); *Hash v. State*, 247 Mont. 497, 500, 807 P.2d 1363, 1365 (1991); *Pierce v. ALSC Architects, P.S.*, 270 Mont. 97, 103, 890 P.2d 1254, 1257 (1995); and *Ryan*, 279 Mont. at 510, 928 P.2d at 229-30.

¶16    It appears that we started down the abuse of discretion road as far back as 1974, when we held that the "granting of the motion for [judgment as a matter of law] was not an abuse of the trial court's discretion." *Wallin v. Kinyon Estate*, 164 Mont. 160, 166-67, 519 P.2d 1236, 1239 (1974). Then, following *Wallin*, and without simply string-citing the cases, we applied the *de novo* standard of review. *See Johnson*, *Standish*, *Parrish*, *Slagsvold*, *Wilkerson*, *Hash*, *Pierce*, and *Ryan*. Recently, however, we reverted back to the abuse of discretion standard of review. *See Somont Oil Co. v. A & G Drilling, Inc.*, 2006 MT 90, ¶ 15, 332 Mont. 56, ¶ 15, 137 P.3d 536, ¶ 15; *Glacier Tennis Club v. Treweek Const.*, 2004 MT 70, ¶ 40, 320 Mont. 351, ¶ 40, 87 P.3d 431, ¶ 40; *In re Mental*

7

*Health of D.L.T.*, 2003 MT 46, ¶ 7, 314 Mont. 297, ¶ 7, 67 P.3d 189, ¶ 7; *Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 25, 301 Mont. 259, ¶ 25, 9 P.3d 38, ¶ 25; *Buhr on Behalf of Lloyd v. Flathead County*, 268 Mont. 223, 239, 886 P.2d 381, 391 (1994); *Nelson v. Flathead Valley Transit*, 251 Mont. 269, 274, 824 P.2d 263, 267 (1992); and *Davis v. Sheriff*, 234 Mont. 126, 134, 762 P.2d 221, 226 (1988) (where we properly expressed the standard of review, but improperly concluded the district court did not abuse its discretion in granting judgment as a matter of law).

¶17    When faced with issues the resolution of which are controlled by inconsistent lines of authority, our approach has been to clear up the inconsistencies, regardless of whether the parties raised the issue.  As we noted in *State v. Montoya*, 1999 MT 180, ¶ 11, 295 Mont. 288, ¶ 11, 983 P.2d 937, ¶ 11:

> Although not put at issue by the parties, we note at the outset that there is a rather prevalent inconsistency in this Court's case law regarding the appropriate standard of review of criminal sentences.

Thus, we "[took] [that] opportunity to clarify the proper standard." *Montoya*, ¶ 13.  As we did in *Montoya*, we now take this opportunity to clarify our jurisprudence with respect to the approach that this Court will hereafter utilize in reviewing the trial court's decision granting or denying a motion for judgment as a matter of law.

¶18    We conclude that whether a judgment as a matter of law should be granted or denied is a question of law.  On questions of law, the parties are entitled to full review by the appellate court without special deference to the views of the trial court. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, vol. 9A, § 2536, 333 (2d ed., West 1995); *accord* Wright & Miller, *Federal Practice and Procedure*, vol. 9A,

8

§ 2536, 238 (2d ed., West Supp. 2006). Accordingly, and henceforth, we will review the district court's grant or denial of a motion for judgment as a matter of law as a legal question for which the *de novo* or plenary standard of review is appropriate.

¶19 We conclude that this standard of review is proper for the following reasons. First appellate review of the trial court's decision to grant or deny a motion for judgment as a matter of law involves not only the assessment of the sufficiency of the evidence but also the application of the aforementioned settled principles of law to that quantum of evidence. Both involve questions of law: The legally required quantum of evidence sufficient to sustain submitting an issue to the jury either exists or it does not. In other words, is there a complete absence of any evidence which would justify submitting the issue to a jury, considering all the evidence and any legitimate inferences that might be drawn from the evidence in the light most favorable to the party opposing the motion? Could reasonable persons differ regarding conclusions that could be drawn from evidence? If, applying these legal rules, the evidence is legally insufficient, the trial court does not have discretion to submit the issue to the jury. However, if the evidence is legally sufficient then the trial court does not have discretion to grant a motion for judgment as a matter of law and, thus, deprive the opposing party of a jury trial. Since the assessment of the sufficiency of the evidence and the application of the law to that assessment cannot involve discretion—i.e., since no deference is given to the trial court—the question is one of law to which the *de novo* or plenary standard of review applies.

¶20 Second, as previously noted in fn (1), M. R. Civ. P. 50(a), tracks F. R. Civ. P. 50. With few exceptions, the federal appellate courts utilize the *de novo* standard of review where the grant or denial of a motion for judgment as a matter of law is at issue. *See* Wright & Miller, *Federal Practice and Procedure* at § 2536. Thus, federal case law lends support to our decision to apply a *de novo* standard in reviewing decisions from a trial court's grant or denial of a motion for judgment as a matter of law.

¶21 In furtherance of our decision here, *Wallin* and any other decisions of this Court (including *Somont Oil Co.*; *Glacier Tennis Club*; *Onstad*; *D.L.T.*; *Buhr*; *Nelson*; and *Davis*), applying an abuse of discretion standard of review to questions involving the grant or denial of a motion for judgment as a matter of law are overruled to that extent.

**DISCUSSION**

**Issue 1.**

¶22 ***Did the District Court err when it granted Costco's motion for judgment as a matter of law?***

¶23 Montana's Wrongful Discharge from Employment Act (WDEA) provides in part:

> (1) A discharge is wrongful only if:
>
> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer violated the express provisions of its own written personnel policy.

Section 39-2-904, MCA. The WDEA further defines "good cause" as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties,

10

disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA. A legitimate business reason for termination is defined as a reason that is "neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Kestell v. Heritage Health Care Corp.*, 259 Mont. 518, 525, 858 P.2d 3, 7 (1993). We have further explained

> An employer's legitimate right to exercise discretion over whom it will employ must be balanced, however, against the employee's equally legitimate right to secure employment. The balance should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or capricious, and unrelated to the needs of the business.

*Kestell*, 259 Mont. at 526, 858 P.2d at 8 (internal citation omitted).

¶24    Johnson maintains that the District Court erred when it granted Costco's motion for judgment as a matter of law because he alleges there were still issues of fact for the jury to ultimately decide. On appeal, Johnson makes separate arguments in respect to the second and third prongs of the WDEA, cited above, in support of his contention that there is evidence which would justify submitting the issues to a jury. After a full review of the record, we will address Johnson's allegations in turn.[2]

*Whether Costco had good cause to discharge Johnson*

¶25    In respect to § 39-2-904(1)(b), MCA, Johnson argues he presented evidence that Costco's reasons for his discharge were false, arbitrary or capricious, and unrelated to the needs of the business. In other words, Johnson contends Costco did not have a legitimate

---

[2]    Although the District Court granted Costco's motion for judgment as a matter of law in respect to all three prongs of the WDEA, Johnson does not address the issue of the first prong, § 39-2-904(1)(a), MCA, on appeal.

business reason to discharge him from employment and thus, good cause did not exist. In particular, Johnson claims that several other Costco employees violated the employment policy that Johnson was allegedly discharged for violating, but were not reprimanded. Moreover, Johnson contends he put forth evidence that eating before paying for a product was a common practice in the bakery, was practiced by many other employees, but that Johnson was the only employee ever discharged for doing so. Johnson concludes that, based on this evidence, a jury could have found that his discharge was not valid under the WDEA as Costco may have acted arbitrarily.

¶26 Costco responds that Johnson's alleged breach of company policy constitutes a failure to satisfactorily perform job duties and is good cause for dismissal. Costco points to *Fenger v. Flathead County*, 277 Mont. 507, 922 P.2d 1183 (1996), as support for its argument. In *Fenger*, the employee (Fenger) was discharged from his position as a juvenile detention officer by Flathead County for not keeping visitors out of secured areas at the detention facility, despite acknowledging the receipt of several written and oral directives to not allow visitors into secured areas. Moreover, Flathead County's personnel policy listed "the failure to obey any order made and given by a supervisor" as just cause for discharge. *Fenger*, 277 Mont. at 508-09, 922 P.2d at 1183-84. We found no issue of material fact and affirmed the district court's grant of summary judgment, as a matter of law, in favor of Flathead County, explaining:

> The record demonstrates that Fenger did not satisfactorily perform his job duties, as he repeatedly ignored the written and oral directives to keep visitors out of the secure areas of the facility. We therefore hold that the violations of the county's policy by Fenger constitute, as a matter of law, reasonable job-related grounds for dismissal.

12

*Fenger*, 277 Mont. at 513, 922 P.2d at 1186 (internal citation omitted). Costco interprets *Fenger* for the proposition that a violation of an employer's employment policies constitutes, as a matter of law, a failure to satisfactorily perform job duties and thus grants an employer good cause to discharge the offending employee. We are not willing to accept Costco's invitation to extend the holding of *Fenger* to all cases involving violations of employment policies. While the factual background of *Fenger* is similar to the case at bar, *Fenger* is nevertheless distinguishable. *Fenger* involved no issue of material facts. It was undisputed that Fenger repeatedly disobeyed clear orders in direct violation of Flathead County's personnel policy and, of particular significance here, that Flathead County equally applied its employment policies to all employees. *Fenger*, 277 Mont. at 508-09, 922 P.2d at 1183-84. As there were no issues of fact, we affirmed the district court's grant of summary judgment as a matter of law. *Fenger*, 277 Mont. at 513, 922 P.2d at 1186. Here, unlike in *Fenger*, there are still issues of fact as to whether Costco equally applied its employment policies. Thus, we cannot extend *Fenger's* holding to the facts herein.

¶27    From reviewing the record, it is apparent that evidence exists that may lead a jury to believe that Costco did apply its employment policies arbitrarily in respect to Johnson. First, several individuals testified that in the years leading up to Johnson's discharge, many employees had violated the grazing policy repeatedly. Some employees personally admitted as much at trial. Even after the meeting where Petersen emphasized that "zero tolerance" would be directed towards any employee who violates the grazing policy,

13

there was testimony that employees still knowingly violated the policy. Specifically, Sherry Thompson was not discharged for eating a piece of pie dough. Not only did Thompson's pie dough incident take place after the Petersen meeting, it took place after Johnson was discharged. This evidence, combined with the years of repeated violations of Costco's grazing policy by several employees, may lead a jury to believe that Costco did not have good cause to discharge Johnson because it applied its employment policy in an arbitrary and capricious manner. When reviewing this evidence in a light most favorable to Johnson (as we are constrained to do), *Williams*, ¶ 19, and because reasonable persons could differ regarding the conclusions which could be drawn from the evidence, *Kearney*, 263 Mont. at 417, 869 P.2d at 777-78, we conclude the District Court erred in granting Costco's motion for judgment as a matter of law in respect to § 39-2-904(1)(b), MCA.

¶28　Even though we determine judgment as a matter of law was not proper in respect to the good cause prong of the WDEA, we will also address Johnson's pretext argument, that is, whether Costco's stated reason for Johnson's discharge was the true motivation for the discharge.[3] In order for an employee to create an issue of fact on the issue of good cause in regards to a pretext, the employee must "prove that the given reason for the discharge . . . is a pretext and not the honest reason for the discharge." *Arnold v. Yellowstone Mountain Club, LLC.*, 2004 MT 284, ¶ 26, 323 Mont. 295, ¶ 26, 100 P.3d 137, ¶ 26 (citing *Mysse v. Martens*, 279 Mont. 253, 262, 926 P.2d 765, 770 (1996)). To

---

[3]　　Although in his brief Johnson makes a pretext claim in respect to the third prong of the WDEA, § 39-2-904(1)(c), MCA, we note that from our past WDEA cases, pretext claims are properly considered under the 'good cause' prong of the WDEA, § 39-2-904(1)(b), MCA.

create this issue of fact, mere denial or speculation will not suffice. *Mysee*, 279 Mont. at 262, 926 P.2d at 770 (citation omitted).

¶29   Johnson argues that an issue of fact exists as to whether Costco's explanation for his discharge was the actual reason for the discharge or whether Costco used its stated explanation as a pretext for some other illegitimate reason. In other words, Johnson claims that an issue of fact exists as to whether Johnson was discharged not for taking a bite of food without paying for it, but rather because Costco needed to eliminate his salary in order to meet its budget in the bakery. Johnson claims that Bogy, his immediate supervisor, expressed concern over meeting the budget requirements in the bakery and that high-end employees (like Johnson) would possibly need to be terminated. Johnson further points out that on the day he was terminated, March 1, 2003, he would have been due a pay raise and that throughout the year, his salary would also increase. Johnson stresses that the desire to eliminate high-end salaries was the actual reason to discharge him, rather than taking the bite of salvage danish. Costco, on the other hand, asserts that Johnson's termination was based solely on his taking a bite of salvage danish and maintains that nothing in the record suggests otherwise.

¶30   We agree with Costco in respect to Johnson's pretext argument. It is disputed whether Bogy had expressed desire to eliminate costs through terminating employees. But even assuming that he had, Bogy did not possess the power to discharge Johnson. Only Jelinek was able to make that decision, and Johnson presented no evidence to suggest that Bogy had any contact with Jelinek regarding Johnson. We find nothing in the record to substantiate Johnson's claim that Costco's stated reason for discharging him

15

is a pretext or illegitimate reason. Johnson's speculation that he may have been terminated because of his higher salary is not enough to create an issue of fact for the jury to determine.

¶31 In respect to Johnson's pretext claim, there is a complete absence of any evidence which would justify submitting the issue to a jury. Thus, we conclude, as a matter of law, that no issue of fact exists as to whether Costco's stated reason for terminating Johnson was actually a pretext.

*Whether Costco violated the terms of its own personnel policy*

¶32 Next, in respect to § 39-2-904(1)(c), MCA, Johnson contends he presented ample evidence that Costco had violated the express provisions of its own personnel policies. Specifically, Johnson points to Costco's policy that a ten-year employee, like Johnson, must have his termination determined by a Costco executive vice-president. Johnson argues that he elicited evidence at trial that Jelinek, the executive vice-president did not actually determine whether Johnson should have been discharged and thus Costco may have violated its own personnel policies.

¶33 Costco responds that evidence was presented at trial that proves Jelinek, the executive vice-president, did in fact make the decision to discharge Johnson and Costco thus followed its own termination policy. Upon our review of the record, the only evidence elicited at trial suggests that Jelinek was traveling with John McKay, a senior vice-president during the time period at issue. McKay reported to Petersen that he and Jelinek discussed the matter and that, ultimately, Jelinek chose to terminate Johnson. There is nothing in the record, beyond speculation by Johnson, that Jelinek did not make

16

the decision at issue here.[4]  The District Court did not err in granting judgment as a matter of law in favor of Costco in respect to Johnson's second argument under the WDEA, § 39-2-904(1)(c), MCA.

¶34    In respect to Johnson's claim that Costco violated the express provisions of its own personnel policy, there is a complete absence of any evidence which would justify submitting the issue to a jury.  Thus, we conclude, as a matter of law, that no issue of fact exists as to whether Costco violated the express provisions of its own personnel policy.

## Issue 2.

¶35    ***Did the District Court err in entering judgment for attorney fees in favor of Costco based solely on the affidavit of Costco's attorney without conducting an evidentiary hearing?***

¶36    Johnson argues that the attorney fees ordered against him by the District Court are not reasonable, especially in light of the fact that no evidentiary hearing took place to determine a reasonable amount.  Because we reverse on Issue 1, there is no prevailing party at this point.  *See* § 39-2-915, MCA.  Thus, we will not address Johnson's argument regarding attorney fees.  The District Court's order regarding attorney fees is hereby vacated.

## Issue 3.

¶37    ***Are the WDEA's arbitration and attorney fees statutes unconstitutional?***

¶38    Lastly, Johnson argues the WDEA's arbitration and attorney fees statutes, §§ 39-2-914 and 915, MCA, are unconstitutional.  However, because we vacate the award of

---

[4]    Although the evidence elicited at trial in respect to whether Jelinek made the decision to fire Johnson was clearly hearsay within hearsay, in violation of M. R. Evid. 805, no objection was made by either party.

attorney fees in Issue 2, we need not address whether those statutes, pursuant to which the fees were awarded, are constitutional.

## CONCLUSION

¶39    We conclude the District Court erred in granting judgment as a matter of law in favor of Costco in respect to Johnson's first argument under the WDEA, § 39-2-904(1)(b), MCA.  Additionally, we conclude the District Court did not err in granting judgment as a matter of law in favor of Costco in respect to Johnson's second argument under the WDEA, § 39-2-904(1)(c), MCA.  We further vacate the award of attorney fees and thus, do not address Johnson's contentions under Issue 3.

¶40    Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.


                                        /S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE