No. 04-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 284

KIMBERLY A. ARNOLD,

   Plaintiff and Appellant,

  v.

YELLOWSTONE MOUNTAIN CLUB, LLC,
a Montana Limited Liability Company,

   Defendant and Respondent.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
       In and For the County of Gallatin, Cause No. DC 2003-252,
       Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Edward J. Guza, Drysdale, McLean & Guza, Bozeman, Montana

   For Respondent:

     Lucy T. France, Garlington, Lohn & Robinson, Missoula, Montana

          Submitted on Briefs: July 7, 2004

            Decided: October 19, 2004

Filed:

   _____
         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Kimberly A. Arnold (Arnold) appeals from the Order entered by the Eighteenth Judicial District Court, Gallatin County, granting Summary Judgment in favor of Yellowstone Mountain Club (YMC) regarding her suit for wrongful discharge from employment.  We reverse.

¶2     We find the following issues dispositive on appeal:

¶3     Did the District Court err in granting Summary Judgment in favor of YMC on the grounds that there were no issues of material fact:

       (a) regarding compliance with its written personnel policies;

       (b) regarding good cause to discharge Arnold?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On December 11, 2001, Arnold was hired as a housekeeper by YMC, a Montana Limited Liability Corporation, in Big Sky, Montana.  YMC is a private ski and golf resort where its members may use YMC's cabins or build their own homes on its property.  Arnold's primary duties included cleaning cabins and other facilities under the direction of her supervisor, Ron Skinner (Skinner).

¶5     In May 2002, Arnold was promoted to the position of co-supervisor and cabin master of the housekeeping department in which she supervised approximately four to twelve employees.  Arnold worked with Skinner to determine how to accomplish the required housekeeping duties.  Arnold obtained training on-the-job and was not provided a formal written description of her supervisory responsibilities.

¶6     In August 2002, YMC noted on a Request for Verification of Employment Form that Arnold's prospects of continued employment were "excellent." In addition, no written or oral reprimands were brought against Arnold by YMC regarding her job performance while at YMC.

¶7     In the weeks leading up to April 16, 2003, Arnold asserts that she tried to contact Will Rosbolt (Rosbolt), who was in charge of the overall organization of the housekeeping department at YMC, on three separate occasions to no avail. Arnold's purpose in contacting Rosbolt was to ask him for guidance with regard to her job responsibilities, to ask for an evaluation, to determine whether she should take direction from him or Skinner, and to address her desire for more structure within her job. Ultimately, Rosbolt met with Arnold on April 16, 2003, and Rosbolt subsequently had a discussion with John Reveal (Reveal), one of the officers of YMC, at which time they determined Arnold should "step back" from her supervisory position.

¶8     On April 17, 2003, Rosbolt held a meeting with both Arnold and Skinner to discuss the status of her position compared to Skinner's. According to Arnold's deposition, Rosbolt informed her that she would be removed from her supervisory position, that she would be a regular member of the housekeeping team, and take direction from Skinner, who was to become her official supervisor. Arnold ended the meeting thereafter by saying "fuck this," and proceeded to walk out of the office. Arnold's radio fell to the ground, and she made no attempt to retrieve it. As Arnold was leaving the resort, Rosbolt telephoned security and indicated that Arnold was being discharged. Arnold learned of her discharge upon exiting

the resort from a security guard. YMC asserts it discharged Arnold for "unprofessional conduct" and "use of abusive language."

¶9 The YMC employee handbook (Handbook) provides for either a three-tiered approach to termination of an employee for performance issues, or immediate termination for certain acts. The three-tiered approach is designed to "ensure reasonable treatment" of YMC employees and proceeds from an informal counseling session, to a formal documentation in writing, to possible suspension, and finally to ultimate termination of employment. The Handbook provides for immediate termination if an employee commits a "serious violation of policy" or if the employee's performance has not improved after counseling or written warning.

¶10 On May 13, 2003, Arnold filed a complaint with the Eighteenth Judicial District Court, Gallatin County, claiming YMC wrongfully discharged her without good cause under § 39-2-904, MCA, which induced her to suffer a loss of wages, a loss of fringe benefits, and a loss of work from her personal clientele who were located on YMC's property.

¶11 On September 9, 2003, YMC filed a motion for Summary Judgment pursuant to Rule 56, M.R.Civ.P., asserting there were no material issues of fact and that YMC was entitled to summary judgment as a matter of law because YMC had good cause to end the employment relationship. On December 30, 2003, the District Court issued an Order granting YMC's motion for Summary Judgment concluding there were no disputed issues of material fact. Arnold appeals.

## STANDARD OF REVIEW

¶12 This Court's review of a district court's grant or denial of a motion for summary judgment is *de novo*. *Watkins Trust v. Lacosta,* 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16. Therefore, we use the same Rule 56, M.R.Civ.P., criteria as applied by the district court. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

¶13 Rule 56(c), M.R.Civ.P., sets forth the framework within which a trial court is to consider and rule on a motion for summary judgment. It reads in pertinent part as follows:

> **Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶14 The moving party has the initial burden of establishing the absence of genuine issues of material fact and entitlement to the judgment as a matter of law. *Carelli v. Hall* (1996), 279 Mont. 202, 207, 926 P.2d 756, 759. Once the moving party has met the initial burden, the burden then shifts to the party opposing summary judgment to present evidence raising a genuine issue of material fact. *Owen v. Ostrum* (1993), 259 Mont. 249, 255-56, 855 P.2d 1015, 1019. The party opposing the motion for summary judgment cannot rely on mere allegations in the pleadings, but must present its evidence raising genuine issues of material fact in the form of affidavits or other sworn testimony. *Yarbro, Ltd. v. Missoula Fed. Credit Union,* 2002 MT 152, ¶ 10, 310 Mont. 346, ¶ 10, 50 P.3d 158, ¶ 10.

¶15   While this Court resolves inferences drawn from the factual record in favor of the party opposing summary judgment, mere denial, speculation, or conclusory statements are insufficient to raise genuine issues of material fact. *Klock v. Town of Cascade* (1997), 284 Mont. 167, 174, 943 P.2d 1262, 1266.  A "material" fact is a fact that "involve[s] the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact." *Mt. W. Bank, N.A. v. Mine & Mill Hydraulics, Inc.*, 2003 MT 35, ¶ 28, 314 Mont. 248, ¶ 28, 64 P.3d 1048, ¶ 28 (citing *State Med. Oxygen v. American Med. Oxygen* (1994), 267 Mont. 340, 344, 883 P.2d 1241, 1243).

## DISCUSSION

¶16   **Did the District Court err in granting Summary Judgment in favor of YMC on the grounds that there were no issues of material fact:**

**(a) regarding compliance with its written personnel policies;**

**(b) regarding good cause to discharge Arnold?**

¶17   *Written personnel policies*.  YMC argues that Arnold was terminated for "use of abusive and threatening language," which is conduct expressly listed in the Handbook as warranting immediate termination.  YMC thus contends that it acted in conformity with its written personnel policies by immediately terminating Arnold, instead of implementing the three-tiered disciplinary approach to "correct" or "improve" her performance.

¶18   Arnold responds by claiming that genuine issues of material fact exist as to whether YMC circumvented its own written personnel policies and whether, based on the totality of

6

the circumstances, Arnold's actions were so egregious as to justify immediate termination in light of Arnold's unblemished employment record.

¶19    The Handbook provides in pertinent part:

> All instances where disciplinary action is required are to be examined thoroughly. Corrective action should be as appropriate to the problem as possible and given in the spirit of improving the employee's performance or behavior which resulted in the violation. The circumstances involved, overall work record and length of service of the employee involved are to be considered as well. Listed below are actions, which, among others and **depending upon circumstances**, will be considered grounds for immediate disciplinary action, up to, and including termination. [Emphasis added.]

The actions therein listed as qualifying for immediate discipline include insubordination, use of abusive or threatening language, discourtesy, rudeness, or other inappropriate behavior to members, visitors, and/or other employees.

¶20    As the District Court correctly noted, this Court has held that even when employee handbooks contain a specific disciplinary sequence, immediate termination of an employee may be appropriate under handbook provisions permitting such a termination. *Koepplin v. Zortman Mining* (1994), 267 Mont. 53, 61, 881 P.2d 1306, 1311. In *Koepplin*, we concluded that "in the overall context of this case, the [employee's] threats . . . justified immediate termination under [the employer's] personnel policy." *Koepplin*, 267 Mont. at 61, 881 P.2d at 1311. The District Court concluded that, based upon Arnold's admissions, she had acted unprofessionally and in violation of the Handbook provisions addressing immediate termination.

7

¶21 However, "unprofessional conduct" is not listed in the Handbook as conduct justifying immediate termination, and more significantly, the Handbook authorizes immediate terminations "depending on the circumstances." Thus, in order to determine the propriety of an immediate termination, this provision requires, at minimum, consideration of the events which led up to the employee's conduct for which she was terminated, and whether, in that light, she engaged in conduct for which immediate termination was justified. In sum, the Handbook requires, in addition to the meeting of April 17, 2003, consideration of the events which led to that meeting.

¶22 In our view, when dutifully considering all of the circumstances here–as alleged by Arnold and more fully discussed hereinafter–there remains a material issue of fact as to whether YMC's immediate termination of Arnold was justified under the Handbook. Therefore, we hold that the District Court erred in granting summary judgment in favor of YMC on the grounds that there were no issues of material fact regarding compliance with its written personnel policies.

¶23 *Good cause*. Under the Wrongful Discharge from Employment Act (WDEA), a discharge is wrongful if the discharge was not for good cause and the employee had completed the employer's probationary period of employment. Section 39-2-904, MCA. Good cause is defined by § 39-2-903(5), MCA, as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason."

¶24    As the party moving for summary judgment, YMC had the burden of establishing there were no issues of material fact regarding good cause, in light of the substantive legal principles, entitling YMC to judgment as a matter of law.  *Smith v. Barrett* (1990), 242 Mont. 37, 40, 788 P.2d 324, 326.  YMC contends the Court need look no further than the following undisputed material facts which it claims constitute good cause to discharge Arnold:  (1) the written personnel policies permitted the employer to immediately discharge an employee for insubordination, use of abusive or threatening language, damage to company property, discourtesy, rudeness or other inappropriate behavior to members, visitors and/or other employees; (2) Arnold, by her own admission said, "fuck this" during a meeting with her supervisor and co-employee; (3) Arnold abruptly terminated the meeting by walking out; and (4) Arnold dropped her radio on the floor and did not pick it up upon exiting the meeting and proceeded to drive off the premises.  YMC further asserts that Arnold failed to defeat its contention that she was properly discharged for good cause at the summary judgment stage because of her failure to offer evidence upon which a fact-finder could determine that the reason given by the employer was "false, whimsical, arbitrary or capricious, or unrelated to the needs of the business."  *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 58, 293 Mont. 97, ¶ 58, 973 P.2d 818, ¶ 58.

¶25    Arnold, as the nonmoving party, claims she presented affirmative evidence to defeat YMC's motion for summary judgment regarding whether she was terminated for good cause. Arnold specifically attests to the following facts:  (1) Arnold received no written or oral reprimands throughout her period of employment while at YMC;  (2) Arnold did not fail to

9

perform her duties and her behavior did not cause a disruption of YMC's operation; (3) YMC noted on a bank financing inquiry form that Arnold's prospects of continued employment were "excellent;" (4) YMC did not use any form of progressive discipline before coming to the determination that Arnold be demoted; (5) Arnold made multiple attempts to contact Rosbolt prior to the April 17 meeting to discuss her issues of concern and received no responses; and (6) Arnold requested a performance evaluation of herself as required per the employee handbook which was refused. Additionally, Arnold contends that YMC pointed only to acts that occurred on April 17, 2003, and gave no reasons as to why it was necessary to demote her in light of her overall performance as a co-supervisor.

¶26 In order for an employee to defeat a motion for summary judgment on the issue of good cause, the employee must "prove that the given reason for the discharge . . . is a pretext and not the honest reason for the discharge." *Mysse v. Martens* (1996), 279 Mont. 253, 262, 926 P.2d 765, 770. Additionally, we have held that summary judgment will be granted if the nonmoving party presents no evidence that there is an issue of material fact relating to the wrongful discharge claim. *Koepplin*, 267 Mont. at 61, 881 P.2d at 1311.

¶27 Arnold, in contrast to the nonmoving party in *Koepplin*, has offered multiple facts which dispute YMC's claim that it had a legitimate business reason to discharge her from employment. The facts alleged by Arnold occurred prior to her outburst and termination and allow for the "reasonable inference" to be drawn that YMC's stated reason for termination was merely a pretext to avoid facing her concerns and following the three-tiered disciplinary process. *Montana Metal Buildings v. Shapiro* (1997), 283 Mont. 471, 474, 942 P.2d 694,

696. Prior to expressing her concerns, Arnold had no prior disciplinary problems, performed her duties well, and YMC expressed that her job prospects were "excellent." Thus, whether there were reasons for Arnold's termination other than the outburst at the April 17 meeting, establishes an issue of fact for jury determination.

¶28    Accordingly, we conclude that the District Court erred when it granted YMC's motion for summary judgment on grounds that there were no issues of material fact regarding good cause to discharge Arnold.

¶29    Reversed and remanded for further proceedings.


                                                    /S/ JIM RICE


We concur:

/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter concurs.

¶30    I concur in the Court's Opinion, and offer the following additional reason for doing so.

¶31    The District Court concluded that, by accepting the policies set forth in the Handbook, Arnold accepted the fact that her violation of certain of the YMC's policies could result in immediate termination, and that YMC was not obligated to offer her any additional relief or consideration.  The problem is that, the way the Handbook is written, virtually any objectionable employee action could result in immediate termination.  Notably, the Handbook lists 29 circumstances that could justify immediate termination.  These circumstances include, among others, such innocuous violations as non-compliance with the dress code or violation of Club vehicle rules, and far more nebulous violations, such as "negligence in job performance" or "unsatisfactory job performance."  With the latitude these provisions give to the employer, YMC could justify virtually any immediate termination, and thus render illusory the Handbook's promise of thorough examination and consideration of the circumstances involved in the discipline.  *See* ¶ 19.  In other words, this sweeping immediate termination provision could easily subsume the progressive discipline provisions of the Handbook.

¶ 32    Under the circumstances presented here, and given the overly broad immediate termination provisions of this Handbook, I would conclude it was error for the District Court

to stop its analysis upon finding that one of these many provisions was violated. As the Court notes, more was required. I therefore concur in the Court's decision.


/S/ PATRICIA O. COTTER


Justice W. William Leaphart joins in the foregoing Concurring Opinion.


/S/ W. WILLIAM LEAPHART


13