
DA 08-0006

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 14

SUDAN DRILLING, INC.,

      Plaintiff and Appellant,

  v.

GLEN D. ANACKER and CLARICE M. ANACKER,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DV 2005-305A
                  Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Richard De Jana, Richard De Jana & Associates, PLLC, Kalispell,
          Montana

      For Appellee:

          Thomas R. Anacker, Anacker Law Office, Bozeman, Montana

Submitted on Briefs:  September 17, 2008

Decided:  January 21, 2009

Filed:

_____
                   Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Sudan Drilling, Inc. (Sudan), appeals from a summary judgment entered by the Eleventh Judicial District Court, Flathead County, in this action for foreclosure of a construction lien. We reverse and remand for further proceedings consistent with this Opinion.

¶2 We restate the issue as whether genuine issues of material fact preclude summary judgment.

## BACKGROUND

¶3 On April 25, 2005, Sudan filed a complaint in the District Court to foreclose on a construction lien against property owned by Glen D. Anacker and Clarice M. Anacker. According to the complaint, the lien represents the balance due Sudan for digging the first of two wells on Anackers' property. In the complaint, Sudan asked for $3,970 due under the lien, plus interest, attorney fees, and costs and disbursements.

¶4 The Anackers filed an answer in which they admitted having entered into a verbal contract with Sudan, under which Sudan was to drill a domestic water well on their property. They denied owing Sudan any money under the contract, however. As a first affirmative defense, the Anackers claimed the location in which Sudan dug the first well was in violation of both the septic setback terms of their agreement and state and local septic regulations requiring a 100 foot setback between a well and a neighboring septic drainfield. As a second affirmative defense, the Anackers claimed Sudan was advised of the correct location to drill the well before drilling operations commenced and is

2

estopped from prevailing on its lien because it drilled in a location other than it was instructed and in breach of the verbal contract.

¶5 The parties deposed Glen D. Anacker; Marvin Sudan, the owner and president of Sudan; Chad Danielson, Sudan's employee who drilled the wells; and James Battee, the Anackers' excavating subcontractor who leveled out a pad for the well drilling equipment to sit on while the wells were being drilled. Based on the record, including those depositions, the Anackers moved for summary judgment. At the District Court hearing on that motion, Sudan requested that summary judgment instead be granted in its favor.

¶6 The District Court later issued a written order granting the Anackers' motion for summary judgment and denying Sudan's request for summary judgment. The court's decision was based on two grounds: that the undisputed fact that the first well was not completed was dispositive to defeat Sudan's lien, and that the undisputed facts established that Sudan had breached its contract with Anackers to drill a domestic well in a workmanlike manner. The District Court directed the Clerk and Recorder of Flathead County to remove Sudan's construction lien on the Anackers' property from the public record. Sudan appeals.

**STANDARD OF REVIEW**

¶7 We review a district court's ruling on a motion for summary judgment de novo, using the same criteria as does the district court under M. R. Civ. P. 56. *Schuff v. Jackson*, 2008 MT 81, ¶ 14, 342 Mont. 156, ¶ 14, 179 P.3d 1169, ¶ 14. Pursuant to M. R. Civ. P. 56(c), the judgment sought "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

3

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact." *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 15, 323 Mont. 295, ¶ 15, 100 P.3d 137, ¶ 15 (internal quotation marks and brackets omitted). All reasonable inferences which may be drawn from the offered evidence must be drawn in favor of the party opposing summary judgment. *Rosenthal v. County of Madison*, 2007 MT 277, ¶ 22, 339 Mont. 419, ¶ 22, 170 P.3d 493, ¶ 22. Finally, summary judgment is an extreme remedy which should not be substituted for a trial on the merits if a controversy exists over a material fact. *Mary J. Baker Revoc. Trust v. Cenex Harvest*, 2007 MT 159, ¶ 17, 338 Mont. 41, ¶ 17, 164 P.3d 851, ¶ 17.

## DISCUSSION

¶8    *Do genuine issues of material fact preclude summary judgment?*

¶9    A person furnishing services or materials under a real estate improvement contract may attach and enforce a construction lien against the real estate for any unpaid part of the contract price. Sections 71-3-521 and -526, MCA. The contract price is the amount agreed upon by the contracting parties, increased or diminished by the price of change orders or extras, amounts attributable to altered specifications, and any breach of contract. Section 71-3-522(3), MCA.

¶10    The depositions filed in this case establish that Sudan and the Anackers entered into a verbal contract under which Sudan agreed to drill a well on the Anackers' property

4

and the Anackers agreed to pay Sudan $21 per foot of well drilled. Before a well could be drilled, the Anackers' excavation subcontractor, James Battee, excavated a roadway to the well's future location and prepared a flat pad upon which the well-drilling equipment could sit. In his deposition, Battee stated he made the pad (otherwise described as a wide spot in the road) two to three weeks before the first well was drilled, at which time the location for the well was marked by a stake in the ground. A week or two before the well was drilled, the Anackers' general contractor, Dave Christensen, notified Battee that the pad needed to be widened, and Battee widened it. Battee did not notice the stake when he widened the pad. Then, after Sudan partially completed drilling the first well, Glen Anacker noticed the well was too close to a neighbor's drainfield. Anacker notified Christensen, who directed Sudan to abandon the first well and drill a second well in a spot further away from the drainfield. Sudan did so.

¶11 The District Court's first rationale for granting summary judgment to the Anackers was that Sudan's construction lien was invalid because it did not complete the first well. The court relied upon *Durand v. Dowdall*, 232 Mont. 347, 757 P.2d 1302 (1988), for the principle that a valid construction lien will not arise when the party claiming the lien failed to substantially complete the contract work.

¶12 Here, the verbal contract between Sudan and the Anackers required Sudan to complete one well for the Anackers. Sudan completed one well for the Anackers—the second well it drilled. As a result, we conclude the District Court's first rationale for granting summary judgment for the Anackers is unfounded.

¶13    In addition, the depositions reveal a genuine issue of material fact as to whether the abandonment of the first well represented a change order or altered specifications in the contract, for which the Anackers are responsible or, instead, a breach of contract by Sudan when Sudan drilled in the wrong place, thereby eliminating its entitlement to a lien for that work.  Chad Danielson, Sudan's well driller, testified by deposition that he believed his boss Marvin Sudan told him where to drill the first well, but he also stated he asked "the operator that was operating the Cat" to confirm where the well should go.  The Anackers claim Sudan or its employee should have relied only on information directly from them or their general contractor, Christensen, on where to drill the well.  In support of that position, they offer excavator Battee's deposition opinion that, if a question arose as to where work was to be done, the subcontractor should go directly to the contractor for the answer.

¶14    On the other hand, Marvin Sudan stated in his deposition that his driller told him Battee's "man" had said the place they were putting the well looked fine by him, and that a subcontractor was a source of information on whom he would regularly rely for such information.  Additionally, well-driller Danielson stated by deposition that he drilled the first well in the only place he could have done so, based on the location and orientation of the pad prepared by the Anackers' subcontractor Battee.  Further, as Sudan points out on appeal, Marvin Sudan testified by deposition that he presumed the Anackers' general contractor, Christensen, had located the spot for Battee to widen for the drill pad for the well.

¶15    Finally, in a letter attached as an exhibit to Glen Anacker's deposition, and which he verified in that deposition, Anacker wrote to Marvin Sudan, "I know that our Contractor, Dave Christensen, and you met on the site Thursday and you were shown the correct location of the well prior to beginning work on the well" and "I have continuously made myself available to questions on the location of the well, as has our Contractor." Sudan contends Glen Anacker's letter constitutes inadmissible hearsay. However, substantially the same information is in the uncontested deposition testimony of subcontractor and excavator Battee, who stated he understood Christensen had shown Sudan where to drill the well.

¶16    In summary, some deposition testimony supports the Anackers' position that Sudan breached the contract by drilling in the wrong location and, therefore, no valid lien exists. Other deposition testimony supports Sudan's position that its lien is valid because it drilled in the wrong location at the direction of the Anackers' general contractor, Christensen, or only because the Anackers' excavator, Battee, prepared the drilling pad in the wrong location, which dictated the location of the well. Resolution of this factual matter is material to determining whether Sudan has a valid lien for drilling the first well.

¶17    We conclude genuine issues of material fact preclude summary judgment. Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JAMES C. NELSON

7

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice Patricia O. Cotter concurs.

¶18   I concur in the Court's Opinion because it appears to be in accordance with ample precedent in our construction lien case law.  I write separately to express my view that cases such as this seem to confound the purpose underlying the construction lien statutes.

¶19   The policy underlying the construction lien statutes is to ensure that a contractor who has performed satisfactory construction work in accordance with a contract receives payment.  One who perfects a construction lien is entitled, among other perks, to priority of payment (§§ 71-3-541 and -542, MCA) as well as the recovery of attorney fees incurred in the filing of the lien and any ensuing litigation (§ 71-3-124(1), MCA)— benefits not available to parties in common law litigation.  The statutory scheme was not intended, it seems to me, to provide a forum for litigating factual disputes over who must pay for work that was clearly **not** satisfactorily completed in the first instance.

¶20 The amount Sudan is now attempting to recover is the expense incurred in installing the abandoned first well. Regardless of whose fault this abandonment was, the undisputed fact is that the first well was neither "completed nor substantially completed" in accordance with the contract. This being so, the condition precedent for the perfection of a construction lien vis-à-vis the first well—that the work was substantially completed in accordance with the contract—was never met. *Durand*, 232 Mont. at 351, 757 P.2d at 1305. This appears to have been the basis for the District Court's decision in this matter. Unfortunately, over the years, courts have implicitly condoned the utilization of the construction lien statutory scheme as a tool to resolve not only disputes over payment for satisfactory and complete work, but also as a mechanism to litigate disagreements over unsatisfactory work, as here. *See e.g. Rossi v. Pawiroredjo*, 2004 MT 39, 320 Mont. 63, 85 P.3d 776.

¶21 I am not suggesting that contractors whose work is rejected as a result of the fault of another should have no forum for recovery of their losses; provided they could establish that the problems with the work were occasioned by the negligence of another, they could recover their losses in a common law suit for damages against the culpable party. However, it seems especially unsuitable to litigate cases like this one under the auspices of the construction lien statutes, when full payment was made for the work that was actually properly completed, leaving only the work that was not properly done as the subject of a construction lien. In this respect, I understand why the District Court ruled as it did, and find its logic in doing so compelling. I nonetheless join the Court's decision because our jurisprudence in the construction lien field has expanded to cover virtually

9

every claim for construction payment, whether or not the work at issue was substantially completed in accordance with the contract.  I therefore concur.


/S/ PATRICIA COTTER



Justice James C. Nelson concurs.

¶22    While the Court's Opinion is written in accordance with existing jurisprudence, I agree with Justice Cotter's Concurrence.  Our caselaw has strayed far afield of the purpose of the construction lien statutes.  This will be an interesting issue to take up if and when it is properly preserved for appeal in the trial courts and argued here.


/S/ JAMES C. NELSON