Justice James Jeremiah Shea delivered the Opinion of the Court.
¶ 1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.
¶ 2 Tye Schulz appeals the Order of the Thirteenth Judicial District, Yellowstone County, granting JTL Group, Inc.'s Motion for Summary Judgment. We affirm.
¶ 3 Schulz worked for JTL Group, Inc. (known as "Knife-River") in various capacities for twenty-nine years. In 2016, Schulz was working as a Project Superintendent. Schulz reported directly to Project Manager Eric Van Hemelryck, and Van Hemelryck reported directly to General Manager J. Halvor Fuglevand.
¶ 4 On March 21, 2016, Schulz and two other Knife-River employees were working on a job near Lodge Grass, when Schulz discovered that fuel was siphoned from company equipment left on the job site. On March 23, 2016, Schulz arrived on the job site to find wet and muddy conditions due to recent rain and snow. Schulz and another employee got their vehicles stuck, and Schulz stated he "needed to get his pickup unstuck with the [company] bulldozer." Schulz shut down the job site because of the poor conditions. Schulz and the other employee then noticed some of the heavy equipment had again been vandalized: padlocks and battery cables had been cut and fuel and batteries were stolen.
¶ 5 Schulz traveled about a mile from the job site, where there was cellular service, and called Van Hemelryck to report the vandalism. Van Hemelryck instructed Schulz to: (1) report the vandalism to the Big Horn County Sheriff's Department; (2) take photographs of the damaged equipment; and (3) contact a private landowner to make arrangements to store the heavy equipment on the landowner's property adjacent to the job site.[1] Schulz called the landowner, who lived roughly a half-mile up the road, but was unable to reach him. At 8:31 a.m., Schulz called the Big Horn County Sheriff's Department to report the vandalism. Schulz arranged to meet Deputy Mike Colvin at a specific mile marker along the road. While waiting at the designated mile marker, Schulz "did the incident report ... and took some pictures...." Schulz claimed he did not travel the half-mile to the landowner's property to attempt to make arrangements because he did not want to miss Deputy Colvin's arrival. It is unclear whether the other employee was still present at the job site, but Schulz did not send any employees to make arrangements with the landowner. At 10:55 a.m., Deputy Colvin arrived. While Schulz conversed with Deputy Colvin, the landowner drove by the job site and stopped to speak briefly with Schulz. Schulz stated that,
I told [the landowner] that I needed to get with him to try and make an arrangement to maybe put equipment on his land, but he had to get to town, and I had to get with the sheriff to do that report, so I never actually got to really meet with [the landowner] on that subject.
At 11:11 a.m., Schulz concluded his report with Deputy Colvin. Schulz then returned to Billings, arriving around 1:00 p.m. Schulz reported to Knife-River's West End shop and delivered the photographs of the damaged equipment.
¶ 6 Around 3:30 p.m., Schulz went to Knife-River's administrative offices, also located in Billings. There, Fuglevand and Van Hemelryck questioned Schulz about whether he had secured the heavy equipment. Schulz stated that he had not, and he suggested hiring a night watchman to guard the equipment. Fuglevand and Van Hemelryck rejected that suggestion and instructed Schulz to return to the job site to make an agreement with the landowner and to move the equipment onto the private property. Schulz objected, arguing the ground was "slop" and not suitable for moving heavy equipment. Fuglevand disagreed, and stated that it would not be a problem to move "tracked and all-wheel-drive construction equipment over muddy ground...." Fuglevand again instructed Schulz to return to the job site and secure the equipment. Schulz responded, "I can't do that." Following this refusal, Fuglevand told Schulz, "[y]ou're done then." Schulz demanded a termination slip, which Fuglevand provided to him. The termination slip stated that Schulz was terminated because he had refused to perform his duty to secure company equipment. That evening, Van Hemelryck went to the job site. Van Hemelryck made a verbal agreement with the landowner that Knife-River would blade the landowner's road in exchange for allowing Knife-River to move the equipment onto the landowner's property. Van Hemelryck and another employee then moved the heavy equipment to the property.
¶ 7 On February 15, 2017, Schulz filed a wrongful discharge suit against Knife-River, alleging Knife-River lacked good cause to terminate his employment.[2] On December 29, 2017, Knife-River moved for summary judgment. On February 14, 2018, the District Court granted Knife-River's Motion. Schulz appeals.
¶ 8 This Court reviews de novo a district court's grant or denial of a motion for summary judgment pursuant to M. R. Civ. P. 56. Schuff v. Jackson , 2008 MT 81, ¶ 14, 342 Mont. 156, 179 P.3d 1169. Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3) ; Wendell v. State Farm. Mut. Auto. Ins. Co. , 1999 MT 17, ¶ 9, 293 Mont. 140, 974 P.2d 623. The evidence, as well as all justifiable inferences drawn from it, must be viewed in a light most favorable to the non-moving party. Svaldi v. Anaconda-Deer Lodge County , 2005 MT 17, ¶ 12, 325 Mont. 365, 106 P.3d 458 ; Rosenthal v. County of Madison , 2007 MT 277, ¶ 22, 339 Mont. 419, 170 P.3d 493. Once the moving party has met its burden of establishing an absence of genuine issues of material fact and entitlement to judgment as a matter of law, the non-moving party must present material and substantial evidence, rather than mere conclusory or speculative statements. Smith v. Burlington N. & Santa Fe Ry. Co. , 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639 (quoting Hiebert v. Cascade County , 2002 MT 233, ¶ 21, 311 Mont. 471, 56 P.3d 848 ). A non-moving party "cannot create a disputed issue of material fact by putting his own interpretations and conclusion on an otherwise clear set of facts." Koepplin v. Zortman Mining , 267 Mont. 53, 61, 881 P.2d 1306, 1311 (1994).
¶ 9 Under the Montana Wrongful Discharge from Employment Act (WDEA), discharge from employment is wrongful if it is not for good cause. Section 39-2-904(1)(b), MCA. "Good cause" is defined as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA ; Davis v. State , 2015 MT 264, ¶ 10, 381 Mont. 59, 357 P.3d 320.
¶ 10 "Reasonable job-related grounds for dismissal" may include an employee's failure to obey an order given by a supervisor, failure to report for work, failure to complete work, or a violation of employee handbook polices. See Fenger v. Flathead County , 277 Mont. 507, 513, 922 P.2d 1183, 1186 (1996) (affirming a district court's grant of summary judgment for the county employer where an employee repeatedly ignored written and oral directives in violation of his employer's policies); Davis , ¶¶ 14-16 (affirming a district court's grant of summary judgment in favor of state employer where the employee repeatedly failed to report for work, refused to attend meetings, and failed to satisfactorily perform her job duties); Becker v. Rosebud Operating Servs., Inc. , 2008 MT 285, ¶¶ 2830, 345 Mont. 368, 191 P.3d 435 (affirming a district court's grant of summary judgment in favor of an employer where an employee hurdled profanity-laced verbal assaults at his supervisors in direct contravention of employee standards of conduct set forth in the employee handbook); Mysse v. Martens , 279 Mont. 253, 262-63, 926 P.2d 765, 770-71 (1996) (affirming a district court's dismissal of employee's wrongful discharge claim where the employee refused to complete tasks not explicitly within the job description but still reasonable employer directives based on her position). "A legitimate business reason" is a reason that is not "false, whimsical, arbitrary, or capricious," and one that must have some logical relationship to the needs of the business. Buck v. Billings Mont. Chevrolet , 248 Mont. 276, 281-82, 811 P.2d 537, 540 (1991) ; Davis , ¶ 10. Where the termination is within the bounds contemplated by the employee handbook, no wrongful discharge exists. Kuszmaul v. Sterling Life Ins. Co. , 2012 MT 154, ¶¶ 25-26, 365 Mont. 390, 282 P.2d 665.
¶ 11 In this case, the District Court concluded Schulz's behavior violated two separate written employment polices: (1) Knife-River's Employee Policy Handbook: an employee's "[f]ailure to carry out an order of a supervisor," and (2) Knife-River's Safety Manual: disobedience by an employee gives cause for immediate termination. The District Court determined Knife-River had good cause to terminate Schulz from his employment because he admitted to understanding the instructions of his superiors and failed to carry them out, in violation of employment policies.
¶ 12 Schulz argues genuine issues of material fact exist as to whether Knife-River's directive was reasonable under the circumstances and whether there was the requisite good cause necessary under the WDEA when Knife-River terminated Schulz's employment on March 23, 2016. Thus, Schulz contends the District Court erred in entering summary judgment in Knife-River's favor and in not allowing this matter to proceed to a jury trial. We disagree.
¶ 13 In depositions, Schulz acknowledged that it was reasonable for his supervisors to expect that he would follow instructions, just as it was reasonable for him to expect his supervisees would follow his instructions. Schulz also acknowledged it was reasonable for Knife-River to assign Schulz, as Project Superintendent, the responsibility of protecting Knife-River's equipment. Schulz offers no evidence to contradict Knife-River's claim that Schulz failed to follow his superior's directive to secure company equipment.
¶ 14 Disobeying an employer directive is not always good cause for termination. Employers are still constrained by the reasonableness of their directives, which must be based on job-related grounds. See § 39-2-903(5), MCA. However, in this case, Knife-River's actions were reasonable under the circumstances. See Mysse , 279 Mont. at 262-63, 926 P.2d at 770-71 ; see also Becker , ¶¶ 28-30. The record shows Knife-River terminated Schulz because of his insubordinate behavior. Knife-River demonstrated it terminated Schulz for reasons that were not "false, whimsical, arbitrary, or capricious" and did so in a manner consistent with, and contemplated by, Knife-River's written employment policies. See Davis , ¶ 10; Kuszmaul , ¶¶ 25-26. Therefore, Knife-River had good cause to terminate Schulz. See §§ 39-2-904(1)(b), -903(5), MCA.
¶ 15 Schulz failed to demonstrate the existence of any issue of material fact regarding the reasons for termination. See M. R. Civ. P. 56(c)(3) ; Wendell , ¶ 9. Knife-River was entitled to judgment as a matter of law. See M. R. Civ. P. 56(c)(3) ; Wendell , ¶ 9. The District Court properly granted summary judgment in favor of Knife-River.
¶ 16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. We affirm.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.

Knife-River employees commonly made arrangements with local landowners to store heavy equipment, and Knife-River previously used this particular landowner's property to store equipment from a nearby job site.

In his deposition, Schulz inferred his discharge was pretextual and that he may have been terminated because Knife-River did not want to continue to accommodate his chronic health condition. The District Court concluded Schulz offered no evidence in support of this inference, and it is not addressed in Schulz's appeal.